IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEYSTONE CENTRAL SCHOOL DISTRICT, | : | No.  3:05-cv-02348 |
| Plaintiff | : | Judge Jones |
| v. | : | |
| E.E., by and through his mother and legal guardian, H.E., | : | |
| Defendants | : | |

## MEMORANDUM AND ORDER

### July 10, 2006

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court are Plaintiff Keystone Central School District's

Motion for Judgment on the Record or, Alternatively, Summary Judgment (doc.

10) and Defendant's Motion for Judgment on the Administrative Record (doc. 12),

both filed on April 3, 2006.

**PROCEDURAL HISTORY**:

This case is an appeal of a decision and order rendered by the

Commonwealth of Pennsylvania Special Education Due Process Appeal Review

Panel.  On November 14, 2005 this case was removed to this Court from the

Clinton County Court of Common Pleas.  (Rec. Doc. 1).  On April 3, 2006, the

parties filed the instant cross-motions for judgment on the administrative record.

1

The cross-motions have been fully briefed and are therefore ripe for our review.

## FACTUAL BACKGROUND:

Defendant E.E. is a minor student residing within the Plaintiff Keystone Central School District and is identified as a child with a disability, namely an emotional disturbance, as defined by the Individuals with Disabilities Education Act ("IDEA").  (Rec. Docs. 10 at 2; 12 at 1-2).  The Keystone Central School District ("District" or "Keystone") is the local educational agency responsible for providing E.E. with a free and appropriate education ("FAPE") under the IDEA.  (Rec. Docs. 10 at 2; 12 at 2).  Keystone developed an Individualized Education Program ("IEP") for E.E. and a related Notice of Recommended Educational Placement ("NOREP") on May 2, 2002.  E.E.'s maternal grandmother, acting as his legal guardian at that time, attended the IEP meeting and signed a NOREP at Keystone's request.[1]  (Rec. Docs. 10 at 4; 12 at 2).

On March 11, 2003, the IEP team met to discuss various issues concerning E.E., including concerns that E.E. was sleeping in class, concerns brought up by his grandmother, and that the IEP team wold look to transition E.E. from the alternative school to the middle school once E.E. started achieving passing grades.

---

[1] E.E.'s maternal grandmother acted as his legal guardian, however she communicated with E.E.'s mother about E.E.'s education.  A review of the submissions indicates that E.E.'s maternal grandmother acted as guardian because his mother worked day-shifts in the Philadelphia area.  (Rec. Docs. 10 at 5; 12 at 2).

(Rec. Doc. 12 at 3).

Thereafter, at the beginning of the 2003-2004 school year, E.E. was placed at the West  Perry Youth Development Center in Loysville, Pennsylvania and while at this placement, the West Perry School District developed an IEP for E.E. (Rec. Docs. 12 at 3; 10 at 5).  E.E. thereafter returned to the Keystone District on February 14, 2004.  (Rec. Doc. 12 at 3).  Also during this time period, E.E.'s mother resumed her parental and guardianship role and began to seek out advocate groups.  (Rec. Doc. 10 at 5).

On April 15, 2004, the Keystone  IEP team had a meeting.  At a point in time at or after the meeting, the District decided to implement the Loysville/West Perry IEP with the exception that the District would not use the 'Saxon Math' program.  (Rec. Docs. 12 at 3; 10 at 5).   E.E.'s mother approved the amended Loysville/West Perry IEP and the District's NOREP.  (Rec. Doc. 10 at 6). However, E.E.'s mother sent a letter to the District, dated May 19, 2004 expressing concerns regarding E.E.'s education.  E.E.'s mother drafted this letter with the assistance of an advocate.  (Rec. Doc. 12 at 4).

Thereafter, on May 21, 2004, the District held another IEP meeting and as a result, the IEP team started behavioral observation of E.E. for a functional behavior assessment ("FBA").  (Rec. Doc. 12 at 4).  By June 2004, the FBA was partially

complete and contained useful findings.  However, it appears that E.E.'s mother
was discontent with the behavior plan developed as a result of the FBA and filed
her request for a due process hearing on July 28, 2004.  (Rec. Docs. 10 at 6; 12 at
5).  In the interim between the request and the hearing, an IEP plan, approved by
E.E.'s mother, was in place for the 2004-20005 school year.  (Rec. Doc. 10 at 6).[2]

On September 9, 2004, the Hearing Officer met with the parties and ordered
additional testing of E.E.  Psychiatrist testing was ordered by the Hearing Officer
and E.E. was evaluated on June 15, 2005.  (Rec. Docs. 12 at 6; 10 at 7).  The
psychiatric report concluded that E.E.'s mental illness "severely hampered his
education."  (Rec. Docs. 10 at 7; 12 at 6).  Based on the psychiatric evaluation, the
Hearing Officer ordered changes to E.E.'s IEP for the 2005-2006 school year to
include, inter alia, a provision that if E.E. refuses to follow directives, particularly
for remaining at his assigned location, that the school would involve civil
authorities to address the violation. (Rec. Doc. 10 at 7-8).  The Panel did not
reverse the Hearing Officer's order regarding changes to E.E.'s IEP.  (Rec. Doc. 10
at 8).

Prior to the psychiatric evaluation and subsequent order of the Hearing

---

[2] It is undisputed by the parties that after the 2004-2005 school term started, the IEP team
continued to meet and that the parent was provided with the procedural safeguard notices.  (Rec.
Doc. 10 at 6).

Officer, E.E.'s mother did not want the District to restrain E.E. and the District felt that school personnel could not confront E.E. regarding his behaviors, which included leaving the school building during school hours.  On one particular occasion, a school police officer followed E.E. some distance when he left the building during school hours, and tried to persuade him to return.  Apparently the police were contacted and E.E.'s mother complained that the District involved the police and juvenile justice authorities, and E.E.'s mother did not want the District to turn to the courts.  (Rec. Doc. 10 at 8).  The Defendants contend that as a result of the psychiatric report and the Hearing Officer's order, the need for involvement of civil authorities to address E.E.'s behavior has changed.  (Rec. Doc. 10 at 9). The District, however, contends that the change in circumstances was solely due to the Hearing Officer's order, and not the psychiatric evaluation of E.E.  (Rec. Doc. 17 at 5).

On July 29, 2005, the Hearing Officer issued a ruling that E.E. was to receive 1232.5 hours of compensatory education and that the District should develop an IEP for the 2005-2006 school year comporting with specific requirements.  E.E. was awarded 935 hours of compensatory education for the 2002-2003 school year.  The Hearing Officer found that E.E. was due 630 hours of compensatory education for the 2004-2005 school year, but reduced that amount

by 50 per cent because of E.E.'s mother's delay in completing the psychiatric

evaluation, resulting in a total award of 297.5 hours for the 2004-2005 school year.

However, on appeal, the Panel reversed the Hearing Officer's equitable reduction

for the 2004-2005 school year and awarded the unreduced 630 hours of

compensatory education.   Further, the Hearing Officer found, and the Panel

affirmed, that the District had provided an appropriate education for 2003-2004

when E.E. returned from the Loysville placement. (Rec. Docs. 10 at 9; 17 at 7). On

October 14, 2005, the District appealed the Panel's decision by filing a Petition for

Review in the Commonwealth Court.  The Defendants removed the case to this

Court.

## STANDARD OF REVIEW:

Any party aggrieved by a decision made under the IDEA by a state

educational agency has a right to bring a civil action in state or federal court.  See

20 U.S.C. § 1415(i)(2)(A).  This Court has jurisdiction over those actions "without

regard to the amount in controversy."  20 U.S.C. § 1415(i)(3)(A).  The IDEA

provides that when a federal district court reviews an administrative adjudication:

> [T]he court (I) shall receive records of the administrative proceedings; (ii)
> shall hear additional evidence at the request of a party; and (iii) basing its
> decision on the preponderance of the evidence, shall grant such relief as the
> court determines is appropriate.

20 U.S.C. § 1415(I)(2). Thus, a court reviewing a state agency decision under the

IDEA does not adopt a traditional summary judgment standard of review.  <u>See</u>

<u>Penn Trafford Sch. Dist. v. C.F.</u>, 2006 U.S. Dist. LEXIS 13581, *7 (W.D. Pa.

2006).

In IDEA cases, the district court must give "due weight" to the

administrative proceedings and the educational experience and expertise applied

therein.  <u>See</u> <u>S.H. V. State Operated School District of the City of Newark</u>, 336

F.3d 260 (3d Cir. 2003); <u>Board of Education of the Hendrick Hudson Central Sch.</u>

<u>Dist. v. Rowley</u>, 458 U.S. 176 (1982); <u>Carlisle Area School District v. Scott P.</u>, 62

F.3d 520 (3d Cir. 1995); <u>Susan N. v. Wilson School District</u>, 70 F.3d 751 (3d Cir.

1995).  The Third Circuit has construed the "due weight" standard as a modified *de*

*novo* review standard.  In applying a modified *de novo* standard, "[f]actual findings

from the administrative proceedings are to be considered *prima facie* correct . . . if

a reviewing court fails to adhere to them, it is obliged to explain why."  <u>S.H.</u>, 336

F.3d at 270.   The district court may depart from the administrative findings of fact

based on "contrary nontestimonal extrinsic evidence on the record."  <u>Id.</u>

**DISCUSSION**:

**A.**      **Equitable Limitation on Compensatory Education Claim**

The District argues that relief ordered by the Hearing Officer and affirmed

by the Panel for conduct between July 28, 2002 and July 28, 2003 is time-barred

by Pennsylvania's equitable limitations period on special education hearings and

claims, citing Montour Sch. Dist. v. S.T., 805 A.2d 29 (Pa. Commw. 2002), *app.*

*denied*, 820 A.2d 163 (Pa. 2003).  The Defendant argues that Montour does not

apply to the instant action because it is a federal case and must be interpreted

pursuant to recent Third Circuit case law.  The Defendant alternatively argues that

if we find Montour to be applicable, the Defendant meets the mitigating

circumstances test established by Montour and is entitled to receive compensatory

education for a period of two years.

In Montour, the Pennsylvania Commonwealth Court held that because the

IDEA is an equitable statute "the initiation of a request for a due process hearing

must occur within one year . . . of the date upon which a parent accepts a proposed

IEP."  Id., 805 A.2d at 40.  The initiation may occur within two years "if the

mitigating circumstances show that the equities in the case warrant such a delay."

Id.  In reaching this conclusion, the Montour court relied on Bernardsville Bd. of

Educ. v. J.H., 42 F.3d 149 (3d Cir. 1994).  In Bernardsville, the Third Circuit

concluded that parents of a disabled child who had been placed in a private school

could seek tuition reimbursement for the private education if it was determined that

the school district had failed to provide the child with a FAPE, but that the amount

of the reimbursement was contingent on whether the parents had given the school

district the opportunity to modify the IEP.  Id. at 157.  To give a school district an

opportunity to modify the IEP, parents must initiate "review proceedings within a

reasonable time of the unilateral placement for which reimbursement is sought."

Id. at 158.  The Third Circuit defined a "reasonable time" as "two years, indeed,

more than one year, without mitigating excuse."  Id.  Thereafter, the Montour court

applied the Bernardsville equitable limit on tuition reimbursement to claims for

compensatory education.

However, the Third Circuit has rejected the application of an equitable

period of limitation to claims for compensatory education.  In M.C. v. Central

Regional Sch. Dist., 81 F.3d 389 (3d Cir. 1996), the Third Circuit held that a

school district that "knows or should know that a child has an inappropriate IEP or

is not receiving more than a de minimis educational benefit must correct the

situation.  If it fails to do so, a disabled child is entitled to compensatory education

for a period equal to the period of deprivation."  Id. at 397.  The Third Circuit

reasoned that "a child's entitlement to special education should not depend on the

vigilance of the parents."  Id.  Further, the Third Circuit noted in its analysis that it

had previously upheld an award of compensatory education of two and one-half

years in the case of Lester H. v. Gilhool, 916. F.2d 865, 873 (3d Cir. 1990).  Id. at

396.

9

Recently, in Penn Trafford, the United States District Court for the Western District of Pennsylvania, in holding that no equitable period of limitation applies to claims for compensatory education, reasoned:

> Parents to not have the same rights as their disabled children under the IDEA.  See, e.g., Collinsgru v. Palmyra Bd. of Educ., 161 F.3d 225, 227 (3d Cir. 1998)(Congress's decision to endow parents with these procedural rights [under the IDEA] should not be read, under the language of the IDEA, to imply that parents also possess the same underlying substantive rights that their children possess.").  While the right to reimbursement belongs to the parents, the right to compensatory education belongs to the disabled child and thus it is appropriate that an equitable period of limitations apply to enforcement of the parents' rights, but not to enforcement of the child's rights.

Penn Trafford, 2006 U.S. Dist LEXIS at *15-16.

A federal Court is not bound to follow a state court's interpretaion of federal law.  United States v. Bedford, 519 F.2d 650, 653 n. 3 (3d Cir. 1975). Accordingly, we reject the District's argument and hold that Montour does not control our determination as to whether an equitable limitation on compensatory education exists under the IDEA.  With that said, we are inclined to accept the Western District's reasoning in Penn Trafford, along with the reasoning of the Third Circuit, the Eastern District of Pennsylvania and our own District, in rendering our conclusion that there is no equitable limitation on compensatory education.  See, e.g., Ridgewood Bd. of Educ. V. N.E., 172 F.3D 238 (3d Cir. 1999)(Rejecting the school district's argument that all compensatory education

10

claims more than two years old were barred); Amanda A. v. Coatesville Area Sch. Dist., 2005 U.S. Dist. LEXIS 2637 (E.D. Pa. 2005)(noting that imposing an equitable limitation on compensatory education would effectively punish the disabled student for her parent's lack of vigilance and holding that "[t]here is no limitations period, whether equitable or legal, on a disabled child's claim for compensatory education pursuant to the IDEA."); Jonathan H. v. Elizabeth Forward Sch. Dist., No. 03-1996 (W.D. Pa. March 4, 2004)(applying Ridgewood over Bernardsville and refusing to apply time limit on requests for compensatory education); Jonathan T. v. Lackawanna Trail Sch. Dist., 2004 U.S. Dist. LEXIS 2915 (M.D. Pa. 2004)(Munley, J.)(rejecting school district's argument that a two-year limitation period applied to compensatory education claim of disabled student under the IDEA); Kristi H. v. Tri-Valley Sch. Dist., 107 F. Supp. 2d 628 (M.D. Pa. 2000)(Munley, J.)(rejecting Bernardsville and applying the reasoning of Ridgewood).  Because the case sub judice implicates E.E.'s right to compensatory education, and not the parents' right to reimbursement, no equitable limitation applies.  To rule otherwise would place an unconscionable burden upon disabled students.

Accordingly, we find that the Defendant was appropriately awarded compensatory education for the time period of July 28, 2002 to July 28, 2003.

**B.      Award of Compensatory Education for 2004-2005**

As previously noted, the Hearing Officer awarded E.E. 630 hours of compensatory education for the 2004-2005 school year, but reduced that amount by 50 per cent because of E.E.'s mother's delay in completing the psychiatric evaluation, resulting in a total award of 297.5 hours for the 2004-2005 school year. However, on appeal, the Panel reversed the Hearing Officer's equitable reduction for the 2004-2005 school year and awarded E.E. the unreduced 630 hours of compensatory education.  The District argues that the Panel erred in finding an IEP was not in place for this time period.  The Defendant argues that an IEP was not in place at the commencement of the school year, thereby entitling E.E. to the compensatory education award.

The IDEA requires that an IEP be in effect for an IDEA-eligible child at the beginning of each school year. See 20 U.S.C. § 1414(d)(2); See also 34 C.F.R. § 300.342.  To  meet this regulation, a school district must have developed an appropriate IEP in the preceding school year, ready for implementation on the first day of the following school year. (Rec. Doc. 9, Ex. 2 at 10, Panel Decision).  As noted by the Panel, the District did not offer an appropriate IEP when the Parent challenged the IEP and placement in September 2004 and moreover, the District continued to neglect E.E.'s needs for the 2004-2005 school year.  We are presented

12

with no extrinsic evidence to refute this finding, made by the Hearing Officer and affirmed by the Panel.

Furthermore, we agree with the Panel's reversal of the Hearing Officer's decision to reduce the award of compensatory education for the 2004-2005 school year based on E.E.'s mother's reluctance to obtain a psychiatric evaluation for her son.  The Panel found that the outcome of the psychiatric evaluation was not central to the development of an appropriate IEP because the District had sufficient information necessary to develop an appropriate IEP long before the evaluation was obtained.  Therefore, despite E.E.'s mother's reluctance to obtain the evaluation, her delay did not cause the implementation of an inappropriate IEP. Accordingly, we affirm the Panel's award of 630 hours of compensatory education for the 2004-2005 school year.

### C.   Nature and Amount of Compensatory Education

Compensatory education is a remedy premised upon a school district's failure to offer a child special education services after it knew or should have known that a child had an inappropriate IEP. See Ridgewood, 172 F.3d 238.  As aforementioned, we affirm the Panel's awards of compensatory education for the 2002-2003 and the 2004-2005 school years.

The District argues that the award amount is inappropriate because the

administrative decision did not contain any analysis of how much and what type of compensatory education was appropriate.  The District argues that the award is not appropriate because it represents entire academic days, and assumes that the District failed to provide "any educational benefit whatsoever" to E.E. during those time frames. (Rec. Doc. 10 at 11).  The Defendant argues that it was appropriate for the Hearing Officer to rule that E.E. "and his mother shall determine the nature and scope of compensatory experiences for which [E.E.] may use the compensatory education entitlement so long as they are remedial in nature and address the areas of need the District failed to address in its program." (Rec. Doc. 17 at 20).

We find the District's argument that the award is inappropriate because it represents entire academic days to be unavailing.  To be sure, the Hearing Officer and the Panel found, and we affirm, that the District failed to provide E.E. with FAPE for the 2002-2003 school year and failed to implement an appropriate IEP for the 2004-2005 school year.   It logically follows that an award of compensatory education would equal the amount of hours contained within the representative school years.  To require otherwise would place an arduous and near impossible task upon the administrative bodies to parse out the exact amount of hours E.E. was not benefitted by FAPE in the above-mentioned school years.  The IDEA does

14

not require such a particularized fashioning of a compensatory education award, and accordingly we find the District's argument on this point to be meritless.

Further, we find that the Hearing Officer's ruling sufficiently tailored the nature of compensatory education that the Defendants are entitled to seek pursuant to the award.  The District argues that the Defendant should be required to incorporate the District in the implementation and use of the compensatory education award.  However, as noted by the Defendant, it is illogical to force E.E. to receive compensatory education through the District, which is the entity that failed to provide him with FAPE in the first place.  Mandating participation with or through the District would only expose the parties to further tension and potential future litigation.  Accordingly, we affirm the award of compensatory education and decline to  place any further limits on the nature of the award.

**CONCLUSION**:

Accordingly, for the foregoing reasons, we affirm the Panel's decision to award compensatory education for E.E. for the 2002-2003 and 2004-2005 school years.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  Plaintiff Keystone Central School District's Motion for Judgment on the Record or, Alternatively, Summary Judgment (doc. 10) is

DENIED.

2.      Defendant's Motion for Judgment on the Administrative Record (doc.

12) is GRANTED.

3.      The Clerk is directed to close the file on this case.


                                        S/ John E. Jones III
                                        John E. Jones III
                                        United States District Judge